IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.  Criminal No.: 2:22-cr-00122

PIERRE DE ROMEO SMITH

    Defendant.

### MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE THE VERDICT

COMES NOW, the Defendant, Pierre De Romeo Smith, by and through undersigned counsel, and moves this honorable court to set aside the verdict on the grounds that a juror intentionally withheld information during the *voir dire* phase of the trial, and that such information was the basis for a challenge for cause. In support thereof, Mr. Smith avers the following:

### RELEVANT PROCEDURAL HISTORY

1. On April 3, 2023, a trial by jury commenced before the Honorable Judge Elizabeth W. Haynes. The potential jurors were sworn and *voir dire* was conducted.

2. The trial concluded on April 6th, 2023 after the jurors returned verdicts of guilty on counts 1, 2, 3, 4, 5, 6 and 7 of the indictment (ECF #64).

3. On April 19, 2023 the Government filed "Notice of Post-Trial Information Regarding Juror and Request for Evidentiary Hearing." (ECF# 73). This filing informed the court that on April 7th, 2023, following the jury trial, the Government was made aware of the fact that Juror #5 was currently under investigation and targeted by the Government.

4. The filing further revealed that federal prosecutors from the United States Attorney's Office for the Eastern District of Virginia, Norfolk division, were directly involved with the case and had met with Juror #5 to debrief.

5. The court subsequently ordered the transcript of the *voir dire* for Juror #5 and held an evidentiary hearing with Juror #5 and his counsel on May 31, 2023. (ECF 98)

6. At the evidentiary hearing, Juror #5 indicated that during *voir dire*, he did not raise his paddle to affirmatively answer any of the questions, (ECF 98 at 15).

7. Specifically, he confirmed that when asked "Have any of you or any members of your immediate family either been employed by or had dealings with the United States Attorney's office, Homeland Security Investigations, Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, or the Virginia Beach Police Department?" Juror #5 did not raise his paddle to answer "Yes" to that question, despite having met with the United States Attorney's Office with an attorney and knowing that he was under investigation by federal law enforcement.

8. Juror #5 candidly revealed during the evidentiary hearing that he <u>should</u> have raised his paddle and answered "Yes" to that question. (ECF 98 at 16).

9. Despite first stating that he did not remember that question, Juror #5 contradicted himself and next stated he believed it was in reference to whether or not he knew the prosecutors sitting in the courtroom, who were not involved with his case. *Id.*

10. Juror #5 confirmed that he had met with federal prosecutors at the United States Attorney's Office with his attorney, and that he was further aware of additional communication between his attorney and the Government regarding the statute of limitations. (ECF 98 at 23).

11. When asked if he would have raised his paddle to the question, "Have any of you at any time involved in a criminal matter in any court that concerns yourself or any member of your immediate family, either as a defendant, witness, or victim, excluding minor traffic violations?" Juror #5 indicated he would not have raised his paddle for that question. (ECF 98 at 21). He indicated that he believed the question only pertained to him if he had been charged.

12. Juror #5 conceded that his answers were not accurate, and that he did not raise his paddle for the open-ended question, "Is there anything else that you think would be necessary to raise with me?" when asked during *voir dire*. (ECF 98 at 25).

## **LAW AND ARGUMENT**

The issue before the court concerns the proper remedy when a juror untruthfully answers a material *voir dire* question. It is a question of the utmost concern and importance, because it is foundational to due process that a defendant in a criminal case be given the right to a trial "by an impartial jury." U.S. Const. amend. VI; *see also United States v. Small*, 944 F.3d 490, 504 (4th Cir. 2019). In *McDonough Power Equipment v. Greenwood,* the United States Supreme Court directly addressed the issue of jurors who do not provide truthful answers during *voir dire*. 464 U.S. 548 (1984). In it, the Court held that

> to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial. *Id. at* 554.

The court further noted that "voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors," and that "The necessity of truthful answers by prospective jurors … is obvious." *Id.*

Thus, it is a two-part test that the court requires: (1) whether or not Juror #5 failed to answer honestly a material question, and (2) whether a correct response would have provided a valid basis for a challenge for cause.

In regards to the first prong, it is clear from the record that Juror #5's answer was not an honest, correct response to the question as to whether or not he had any previous dealings with the United States Attorney's Office. Juror #5 explicitly stated at the evidentiary hearing that he would have answered the question differently. Juror #5 did in fact have dealings with the federal prosecutors' office, the same office prosecuting the Defendant. Juror #5 was the target of an investigation, hired counsel, sat down and debriefed with the USAO, and was aware of the fact that his lawyer was in communications with the USAO regarding technical legal matters such as statutes of limitations. (ECF 98).

A. *Per Se Disqualification*

The question therefore is whether or not the correct answer would have provided a valid basis to challenge Juror #5 for cause. First, the court must determine whether a *per se* rule of disqualification applies or whether "the court demonstrates a clear disregard for the actual bias of the juror." *Id. United States v. Fulks*, 454 F.3d 410, 431 (4th Cir. 2006) (citing *Greenwood*)(internal citations and quotations omitted). The Fourth Circuit, however, will not delineate any list of "per se" disqualifications as they have "long refused to manage jury selection from the court of appeals through promulgating rules of automatic disqualification." *United States v. Turner,* 389 F.3d 111 (2004). Instead, the court defers to the court's ability to assess juror impartiality.

Juror #5's interactions and dealings with the United States Attorney's Office, combined with the fact that he was under federal investigation, resulted in a scenario where Juror #5 should

have been struck for cause. He was the target of a federal investigation and he had engaged with the United States Attorney's Office in order to resolve that investigation. He hired an attorney, and then subsequently met with the USAO. He further was aware that the investigation was ongoing, and his attorney and the USAO were engaged in communications via letter that he was aware of.

Certainly, if Juror #5 had pending charges before the Court, he would have been struck for cause. The Court should find no difference in the distinction in this case. As the subject of an ongoing federal investigation involving NCIS and the USAO, Juror #5 was still exposed to the very real potential of a federal indictment. The fact that such indictment had not yet been rendered does not change the fact that Juror #5 was exposed to criminal liability by the same office that was prosecuting Mr. Smith.

Furthermore, by answering the question untruthfully, Juror #5 deprived the court of the opportunity to ascertain and explore any further potential biases or issues of impartiality. While Juror #5 stated post-trial that he was impartial and that his dealings had no impact on his service, these statements come only after the conclusion of all the evidence and the rendering of the verdict, and are thus not relevant as to whether or not at the time of *voir dire* he harbored any biases or impartiality, or more specifically a desire to assist the Government in securing a conviction perhaps in the misguided belief that it would aid his own investigation. These are all questions and concerns that would have been addressed if the juror answered the question truthfully. Absent that, the only evidence before the Court to consider is whether Juror #5's status as a target of the investigation rendered him disqualified to serve on the jury. Mr. Smith submits that it does, and that being under a federal investigation, having an attorney for such investigation, and

communicating with and discussing the case with same office prosecuting Mr. Smith, ultimately rendered him in a position where there was a valid basis to challenge his jury service for cause.

## FAIRNESS OF THE TRIAL

While the *McDonough* test is understood to be a two-part test, the Fourth Circuit adds an additional, third part to the analysis: whether or not the fairness of the trial was affected. *See Conaway v. Polk*, 453 F.3d 567, 585 n.22 (4th Cir. 2006)("The inquiry into whether a trial's fairness was affected essentially constitutes a third part, however, as it must be satisfied before the juror's bias may be proven. In any event, we adhere to the uniform practice of referring to the *McDonough* test as having two parts."). The implicit bias in this case is evident from the relationship between Juror #5 and the prosecutor's office. He had been under investigation by the same office, had contact with the same office, discussed his case through his attorney with the office, and was potentially subject to charges. Such an appearance of impropriety directly impacts the foundational fairness of the jury trial system, as it is often the very reason there are in fact "per se" disqualifications to begin with. Such disqualifications might be of individuals who would be in fact serve impartially and render a verdict based solely on the evidence. However, but for the *per se* disqualifications—perhaps a direct relationship with a litigant, counsel, a judge, etc.—they cannot serve. *See Polk* at 586 (citing *Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998)("Just as we would presume bias if the brother of the prosecutor were on a jury, we presume bias where a juror lies in order to secure a seat on the jury.").

Here, the same rationale applies. Juror #5's interactions with the United States Attorney's Office placed him in a situation where the bias is implicit, and the appearance of impropriety—particularly in light of the false answers during *voir dire*—directly impacts the fairness of Mr. Smith's trial. One cannot assume that the bias would be *against* the Government given the facts.

6

Instead, it is equally likely that the bias would be for an ulterior motive to protect his own self-interests. Regardless, Juror #5's connections to the prosecution rendered him ineligible for service, and that combined with his false answers that prevented a strike for cause impacted the fairness of the trial.

## CONCLUSION

Juror #5 concealed the fact that he was under federal investigation and had dealing with the United States Attorney's Office. This Court should find that such status rendered him disqualified for service. This, in turn, affected the fairness of Mr. Smith's ability to receive a fair trial under the Constitution. Accordingly, for the foregoing reasons, Mr. Smith moves the court to set aside the verdict and order a new trial.

Respectfully submitted,

PIERRE DE ROMEO SMITH
By Counsel

_____/s/_____
S. Mario Lorello, Esquire
VSB# 80629
Counsel for Pierre De Romeo Smith
ZOBY & BROCCOLETTI, P.C.
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
mario@zobybroccoletti.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 6th day of October I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Megan Montoya, Esquire
United States Attorney's Office
101 W Main Street, STE 8000
Norfolk, VA 23510
757-441-6331
Megan.montoya@usdoj.gov


Rebecca Gantt, Esquire
United States Attorney's Office
101 W Main Street, STE 8000
Norfolk, VA 23510
757-441-6331
Rebecca.ganttt@usdoj.gov


                                            Respectfully submitted,

                                            PIERRE DE ROMEO SMITH
                                            By Counsel

                                            _____/s/_____
                                            S. Mario Lorello, Esquire
                                            VSB# 80629
                                            Counsel for Pierre De Romeo Smith
                                            ZOBY & BROCCOLETTI, P.C.