IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.                                                                                          Criminal Action No. 2:22-cr-122

PIERRE DE ROMEO SMITH,

    Defendant.

## MEMORANDUM ORDER

This matter comes before the Court on Defendant's Motion to Set Aside Verdict ("Motion"). ECF No. 108. The United States responded to the Motion, and Defendant replied. Opp'n to Def.'s Mot. Set Aside Verdict ("Resp. in Opp'n"), ECF No. 110; Reply to Government's Opp'n Mot. Set Aside Verdict ("Reply"), ECF No. 112. The Court has determined that the issues are adequately presented in the briefing and a hearing is not necessary. E.D. Va. Loc. Civ. R. 7(J). Accordingly, the matter is ripe for adjudication.

For the reasons stated below, Defendant's Motion is DENIED.

### I.   BACKGROUND

Defendant was charged in a seven-count indictment with: Sex Trafficking by Force, Fraud, and Coercion in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), and 2 (Count I); Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 2 (Count II); Production of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. §§ 2251(a) and 2 (Count III); Possession with Intent to Distribute Cocaine, Fentanyl, and Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts IV–VI); and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) (Count VII). ECF No. 12. On April 6,

2023, Defendant was convicted of all seven counts of the Indictment after a four-day jury trial. ECF No. 64.

On April 19, 2023, the Government filed a sealed Notice of Post-Trial Information Regarding Juror and Request for Evidentiary Hearing ("Notice"). ECF No. 73. The Government indicated that on April 7, 2023, the day after the jury rendered its verdict, it learned that one of the seated jurors, Juror Number 5, was under investigation by the Naval Criminal Investigative Service ("NCIS"), though the juror had not been charged or provided a formal plea offer. *Id.* at 1–2. The U.S. Attorney's Office for the Eastern District of Virginia, Norfolk Division, was involved in the investigation, though neither of the two Assistant U.S. Attorneys involved in the prosecution of this matter were involved in or knew of the investigation of Juror Number 5.[1] *Id.* at 1–2. Despite the ongoing investigation, during the jury selection process, Juror Number 5 did not respond to the Court's question regarding prior dealings with the U.S. Attorney's Office. *Id.* at 4. The day after the Government filed its Notice, Defendant moved for an extension of time to file a motion for a new trial. ECF No. 76. The Court granted the motion and indicated that it would set a deadline at the upcoming hearing. ECF No. 77.

On May 31, 2023, the Court held an evidentiary hearing regarding Juror Number 5. ECF No. 84. The Government provided Juror Number 5 immunity from prosecution for any false statements made during *voir dire*, conditioned on the juror's truthful and complete testimony at the evidentiary hearing. Immunity Agreement, ECF No. 84-2; Evidentiary Hr'g Tr. ("Tr.") at 13:7–15:2, ECF No. 100. At the hearing, Juror Number 5 confirmed that he did not raise his paddle to affirmatively answer any of the questions at *voir dire*. Tr. at 15:15–20, ECF No. 100. The Court

---

[1] Consistent with their Office's policies, the Assistant U.S. Attorneys involved in this case had not conducted research on the jurors prior to or during trial. Notice at 2, ECF No. 73.

asked the juror if he recalled hearing the question, "Have any of you or any members of your immediate family either been employed by or had dealings with the United States Attorney's Office, Homeland Security Investigations, Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, or the Virginia Beach Police Department?" *Id.* at 15:21–16:2, 16:5. The juror replied, "not that specifically." *Id.* at 16:6. Asked whether "hearing it now, [he] should . . . have raised [his] paddle in response to that question," Juror Number 5 responded, "[a]fter thinking about it, yes." *Id.* at 16:7–9; *see also id.* at 17:1–5. He stated that he originally understood the question to be asking whether he knew the specific prosecutors and defense attorneys involved in the case. *Id.* at 16:10–14.

The Court then inquired as to the reason Juror Number 5 should have responded affirmatively to the *voir dire* question. Juror Number 5 explained that he was the target of an investigation but did not know much about the case. *Id.* at 18:20–23. He said the investigation had gone on for several years but had "been silent for the last two or three [years]." *Id.* at 18:10–12. As part of the investigation, he indicated that he had been to the U.S. Attorney's Office one time. *Id.* at 19:6–8. On further questioning, the juror also acknowledged that he was aware of recent correspondence between his attorney and the U.S. Attorney's Office regarding extension of the statute of limitations. *Id.* at 23:2–20. The juror did not affirmatively raise the issue when asked if there was anything else he thought necessary to raise with the judge because he "thought [he] answered all of the questions truthfully" and it "did not cross [his] mind" to raise the issue. *Id.* at 25:15–24.

Additionally, at the evidentiary hearing, Juror Number 5 affirmed that he was truthful when answering during *voir dire* that he was able to render a just, fair, honest, and impartial verdict. *Id.* at 26:17–21; *see also id.* at 26:22–27:10. Juror Number 5 denied that his prior interactions with

3

the U.S. Attorney's Office or NCIS motivated him to not disclose these interactions so that he would be more likely to be selected as a juror, and to the contrary, he indicated that he did not wish to be selected but was "willing to do [his] duty." *Id.* at 20:7–17. The juror also affirmed that he would not treat federal agents differently from other witnesses. *Id.* at 20:1–6.

At the hearing, the Court set a deadline of June 21, 2023, for Defendant to file post-trial motions. *Id.* at 28:13–14; ECF No. 84. Defendant, through counsel, did not file any motions by the deadline. On August 4, 2023, Defendant and his counsel both filed motions to substitute counsel, with Defendant asserting that his attorney did not adequately confer with him about decisions made on his case. ECF Nos. 93, 94. At a hearing held on August 9, 2023, the Court found that there was a breakdown in communication between Defendant and his attorney, which was partly related to Defendant's desire to file a motion for a new trial. Tr. of Proceedings on Aug. 9, 2023 ("Aug. 9 Tr.") 5:15–6:12, 10:14–17, ECF No. 107. The Court granted Defendant's motion to substitute his attorney, and on August 10, 2023, the Court appointed Defendant's current counsel. ECF Nos. 93, 94, 95, 96. On September 5, 2023, the Court held a status call with counsel for the parties and authorized defense counsel to file any motions by October 6, 2023. ECF No. 95. On October 6, 2023, Defendant filed the instant Motion for a new trial. ECF No. 108. On October 20, 2023, the Government responded, challenging Defendant's motion as untimely and lacking merit. ECF No. 110. On October 27, 2023, Defendant replied. ECF No. 112.

4

## II. STANDARD OF REVIEW

### A. Timeliness

In general, a defendant must file a motion to vacate a judgment and grant a new trial within fourteen days after the verdict is entered. Fed. R. Crim. P. 33(b)(2).[2] Nevertheless, if a party moves for an extension of time after the time to file has expired, the Court may extend the deadline "if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B).

The Fourth Circuit has not specifically addressed what constitutes excusable neglect in the context of the filing of a Rule 33 motion. *United States v. McConnell*, No. 2:14CR00001-009, 2015 WL 2365628, at *1 (W.D. Va. May 18, 2015) (noting that the Fourth Circuit has not yet addressed this issue in the specific context of Rule 33 motions). It has indicated, however, that "[e]xcusable neglect generally has the same meaning throughout the federal procedural rules." *Martinez v. United States*, 578 F. App'x 192, 194 n.* (4th Cir. 2014); *see also United States v. Munoz*, 605 F.3d 359, 367–69 (6th Cir. 2010) (applying the excusable neglect standard discussed below to Rule 33 motions).

Neglect encompasses "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993); *accord Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996); *see also Stutson v. United States*, 516 U.S. 193, 194–98 (1996) (per curiam) (applying the *Pioneer* excusable neglect standard in the criminal context); *United States v. Powell*, No. 3:07CR324, 2014 WL 12712258, at *1–2 (E.D. Va. Feb. 19, 2014) (same); *United States v. Martin*, No. 4:14CR17, 2014 WL 3058514, at *1–2 (E.D. Va. June 6,

---

[2] Defendant acknowledges that Rule 33(b)(1), involving newly discovered evidence, does not apply. *See* Reply at 1, ECF No. 112.

2014) (same). When determining whether neglect is excusable, the Court conducts "an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission." *Thompson*, 76 F.3d at 533 (alteration in original) (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). The Court considers factors such as "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). Of those factors, the reason for delay is the "most important." *Fernandes v. Craine*, 538 F. App'x 274, 276 (4th Cir. 2013) (quoting *Thompson*, 76 F.3d at 534). Though the inquiry is flexible, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Thompson*, 76 F.3d at 533 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 392). Moreover, "it [is] appropriate to hold a client accountable for the mistakes of counsel." *Id.* (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 392).

**B.     Motion to Set Aside Verdict**

Under the Federal Rules of Criminal Procedure, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, the Fourth Circuit has advised that trial courts "should exercise [their] discretion to award a new trial sparingly." *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006) (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)).

The Sixth Amendment of the United States Constitution guarantees the right to a trial by an impartial jury. U.S. Const. amend. VI; *Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006). An impartial jury is one "capable and willing to decide the case solely on the evidence before it." *Conaway*, 453 F.3d at 582 (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548,

6

554 (1984)). Under the *McDonough* test, a juror's bias may be established "by showing (1) that the juror 'failed to answer honestly a material question on *voir dire*'"; "(2) that 'a correct response [to that question] would have provided a valid basis for a challenge for cause'"; and (3) that "the juror's 'motives for concealing [the] information' or the 'reasons that affect [the] juror's impartiality can truly be said to affect the fairness of [the] trial.'" *Id.* at 585, 588 & n.20 (alterations in original) (quoting *McDonough*, 464 U.S. at 556). "This test applies 'equally to deliberate concealment and to innocent non-disclosure.'" *Gardner v. Ozmint*, 511 F.3d 420, 424 (4th Cir. 2007) (quoting *Conner v. Polk*, 407 F.3d 198, 205 (4th Cir. 2005)).

Once it is established that a juror failed to honestly answer a material *voir dire* question, the Court must consider whether the Court would have stricken the juror for cause. *See McDonough*, 464 U.S. at 555–56; *see also United States v. Maxwell*, No. 1:20CR330, 2022 WL 986298, at *1 (S.D.N.Y. Apr. 1, 2022) ("Controlling law is clear that the question is not whether the Defendant would have chosen to exercise one of her discretionary peremptory strikes against this juror . . . . It is only whether the Court would have struck him for cause . . . ."). "When a district court considers a challenge for cause, the critical issue . . . is whether the juror could be fair and impartial and decide the case on the facts and law presented." *Howard v. City of Durham*, 68 F.4th 934, 961 (4th Cir. 2023) (cleaned up). "The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law." *United States v. Wood*, 299 U.S. 123, 133 (1936).

Implied bias is "a bias attributable in law to the prospective juror regardless of actual partiality." *Id.* at 134. The Fourth Circuit has generally declined to announce rules for *per se* juror disqualification, instead deferring to the trial judge to make such determinations. *See United States v. Turner*, 389 F.3d 111, 115 (4th Cir. 2004). Trial courts generally find implied bias only in

7

"limited" and "extreme" situations "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *United States v. Fulks*, 454 F.3d 410, 432 (4th Cir. 2006) (quoting *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988)). Examples include when the juror is "a close relative of one of the participants in the trial or the criminal transaction," when the juror was a "witness," or when the juror was "somehow involved in the criminal transaction." *Id.* (quoting *Fitzgerald v. Greene*, 150 F.3d 357, 365 (4th Cir. 1998)).

On the other hand, "actual bias, or bias in fact, exists when a juror, because of his or her partiality or bias, is not capable and willing to decide the case solely on the evidence before him or her." *Porter v. White*, 23 F.4th 322, 327 (4th Cir. 2022) (cleaned up). Carelessness in responding to *voir dire* questions does not necessarily "indicate that [the juror] had a preconceived notion about the result of [the defendant's] trial or that he could not decide [the defendant's] guilt or innocence based on the evidence adduced at trial." *Id*. at 331. "[J]urors are not necessarily experts in English usage." *McDonough*, 464 U.S. at 555. "Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." *Id.* Accordingly, carelessness alone does not necessarily indicate actual bias. *Porter*, 23 F.4th at 327, 331.

### III.  ANALYSIS

Defendant argues that a new trial should be granted because Juror Number 5 "intentionally withheld information during . . . *voir dire*" and such information would have provided the basis for a challenge for cause, as being the target of a federal investigation is grounds for *per se* disqualification. Mem. Supp. at 1, 4–6, ECF No. 109. Further, Defendant argues that the juror's "implicit" bias affected the fairness of the trial because "[s]uch an appearance of impropriety

8

directly impacts the foundational fairness of the jury trial system." *Id.* at 6. The Government opposes granting a new trial, arguing that being the target of a federal investigation is not automatically disqualifying and that there is no evidence that Juror Number 5 was biased or that he intentionally withheld information. Resp. in Opp'n at 12–17, ECF No. 110. The Government also contends that Defendant's Motion was untimely. Resp. in Opp'n at 7–11, ECF No. 110. Defendant counters that the delay is the result of excusable neglect, and the Court should therefore extend the filing deadline pursuant to Rule 45 of the Federal Rules of Criminal Procedure. Reply at 1–3, ECF No. 112.

The Court addresses each issue in turn.

**A.     Timeliness of the Motion**

The Court finds that the delay in filing Defendant's Motion was caused by excusable neglect and therefore finds good cause to extend the filing deadline for Defendant's Motion.

Whether the delay in filing was based on excusable neglect is an equitable inquiry and the Court must therefore consider all relevant circumstances surrounding Defendant's delayed filing. *Pioneer Inv. Servs. Co.*, 507 U.S. at 395. Defendant's reason for delay—the most important factor—weighs in favor of accepting the untimely filing. *See Thompson*, 76 F.3d at 534. Generally, it is appropriate to hold a client accountable for counsel's mistakes, and simply hiring new counsel, alone, does not constitute sufficient grounds to find excusable neglect for an untimely filing. *See Knowles v. United States*, No. 1:11CR630, 2022 WL 999078, at *23 (S.D.N.Y. Mar. 30, 2022). That being said, the evidence here shows that, prior to the Court's deadline, Defendant desired that such a motion be filed and Defendant's former counsel suggested he would file the motion, but there was a breakdown in communication that resulted in the motion not being submitted. *See* Mot. Extension, ECF No. 76 (signaling intent to file a motion for a new trial); Tr. at 28:2–14, ECF No.

100; Aug. 9 Tr. at 5:8–6:16, 10:14–17, ECF No. 107. Moreover, Defendant's current counsel filed the motion in a timely manner given the circumstances. Defendant's new counsel was appointed on August 10, 2023, and at a status conference on September 5, 2023, the Court authorized defense counsel to file any motions by October 6, 2023. ECF Nos. 96, 97. Defendant filed the Motion by the newly designated deadline. ECF No. 108. Accordingly, the Court finds that the reason for the delay weighs in favor of a finding of excusable neglect.

No other factor weighs against accepting the untimely filing. The Government has not articulated any prejudice that it would face as a result of the untimely filing, and the Court finds none. Similarly, approximately three and a half months elapsed between the June 21, 2023, deadline the Court initially imposed at the evidentiary hearing and the October 6, 2023, deadline the Court imposed after new counsel was appointed; the Court does not find that such delay had a detrimental impact on the judicial proceedings in this case. Finally, while the Court recognizes that Defendant has requested new counsel multiple times over the course of this case, the Court does not find that Defendant acted in bad faith. The Court therefore finds good cause to extend the deadline for Defendant's Motion.

**B.     Motion to Set Aside Verdict**

Proceeding to the merits, the Court declines to grant a new trial. Defendant has not satisfied the requirements of the *McDonough* test, and granting a new trial does not serve the interests of justice in this case.

It is undisputed that Juror Number 5 failed to answer honestly a material question during *voir dire*. *See* Mem. Supp. at 4, ECF No. 109; Resp. in Opp'n at 11–12, ECF No. 110. The juror failed to answer in the affirmative as to whether he had dealings with the U.S. Attorney's Office, despite being the subject of an ongoing federal investigation by the U.S. Attorney's Office and

10

NCIS. Tr. at 15:21–16:14, 17:1–7, 18:9–19:22, ECF No. 100. The materiality of this omission is clear.

Still, a correct answer to the question would not have provided a valid basis to challenge Juror Number 5 for cause. First, Juror Number 5 was not *per se* disqualified as a result of his ongoing investigation by the U.S. Attorney's Office. *See Turner*, 389 F.3d at 115–16; *see also United States v. Stewart*, 317 F. Supp. 2d 432, 439 (S.D.N.Y. 2004) ("Defendants have cited no authority for the proposition that a prospective juror who has been arrested but not convicted of a crime faces a *per se* bar to jury service in a case involving entirely unrelated crimes."). Juror Number 5 was also not impliedly biased because the juror's relationship with "some aspect" of Defendant's trial—here, interaction with the U.S. Attorney's Office—was not so extreme that it was "highly unlikely that the average person could remain impartial." *See Fulks*, 454 F.3d at 432 (citation omitted). Despite the juror's ongoing investigation, his interactions with federal agents appear to have been limited. *See* Tr. at 18:9–14, 19:6–20, 20:18–21:2, 23:2–20, ECF No. 100. The juror indicated that he had not interacted with any of the Assistant U.S. Attorneys involved in this case. *Id.* at 22:18–23:1. In addition, the type of conduct being investigated does not appear to have had any relationship with the charges in Defendant's case. *See id.* at 18:18–23; Indictment, ECF No. 12. Therefore, the Court does not find that Juror Number 5 had implied bias and would not have stricken Juror Number 5 for cause on that basis.

Likewise, there is no indication that Juror Number 5 was actually biased. The Court finds that Juror Number 5's testimony at the evidentiary hearing was credible.[3] Defendant asserts that

---

[3] The Court notes that the juror's immunity agreement with the Government provided an incentive to testify truthfully or face the possibility of criminal perjury charges. *See* Immunity Agreement, ECF No. 84-2; *United States v. Maxwell*, No. 1:20CR330, 2022 WL 986298, at *8 (S.D.N.Y. Apr. 1, 2022*)* (finding that a juror's immunity agreement provided "a strong incentive to testify truthfully").

11

Juror Number 5 intentionally withheld information during *voir dire*. But the Court credits the juror's explanation that he simply misunderstood the question and did not intentionally conceal information to increase his likelihood of being placed on the jury. Tr. at 16:10–14, 20:7–15, ECF No. 100. Admittedly, the question asked about several entities, as well as two different types of interactions. *Id.* at 15:21–16:2 ("Have any of you or any members of your immediate family either been employed by or had dealings with the United States Attorney's Office, Homeland Security Investigations, Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, or the Virginia Beach Police Department?"). The Court recognizes the question could have been phrased better. And while the juror may have been careless in responding to questions during *voir dire*, carelessness alone does not equate to bias. *See Porter*, 23 F.4th at 331; *see also McDonough*, 464 U.S. at 555–56. The essential issue is whether Juror Number 5 could be fair and impartial in deciding the case on the evidence and the law presented. *See Howard*, 68 F.4th at 961. On this question, the evidence shows that the juror was able to serve as a fair and impartial juror. At the evidentiary hearing, Juror Number 5 credibly affirmed his ability to render a just, fair, honest, and impartial verdict, and when asked whether he would treat federal agents or the federal government differently than other witnesses due to his dealings with them as part of his federal investigation, he responded "[a]bsolutely not." *See* Tr. at 19:23–20:6, 26:17–27:10, ECF No. 100. Given these circumstances, the Court would not have stricken Juror Number 5 for cause on the basis of actual bias. For these reasons, the Court finds that Defendant cannot satisfy the second prong of the *McDonough* test, finding a lack of implied or actual bias that would provide a basis for striking Juror Number 5 for cause.

  Finally, even if these circumstances were sufficient to constitute juror bias under the second step of the *McDonough* test, it cannot truly be said that the fairness of Defendant's trial was

affected. *See Conaway*, 453 F.3d at 588. The evidence does not show that Juror Number 5 had any "motive" for failing to disclose the investigation, nor that his stated reasons for concealing the information—i.e., his misunderstanding of the Court's questions—reveal anything that would put the fairness of Defendant's trial at stake. *See id.* at 588 ("[A] juror's bias is only established under *McDonough* if the juror's motives for concealing information or the reasons that affect the juror's impartiality can truly be said to affect the fairness of the trial." (cleaned up)); *cf. Porter v. Gilmore*, 479 F. Supp. 3d 252, 310–11 (E.D. Va. 2020) (finding that the fairness of a trial was not affected where the juror did not have any improper motives for failing to provide certain information during *voir dire* and there was no evidence that he was impartial or biased), *aff'd sub nom. Porter v. White*, 23 F.4th 322 (4th Cir. 2022).

Accordingly, the Court does not find that Juror Number 5's failure to correctly answer the question during *voir dire* violated Defendant's Sixth Amendment rights. Defendant's request for a new trial is denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion, ECF No. 108, is DENIED. Let the Clerk file a copy of this Order electronically and notify all counsel of record. The parties are directed to contact chambers within seven (7) days to set this matter for sentencing.

It is so ORDERED.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: March 21, 2024